May it please the court. My name is Chris Cradville. I'm with the Dykema Gossett Law Firm and I have the privilege of representing Mr. Micah Phillips who is present in the gallery today. He's a 12-year veteran of the Dallas Fire and Rescue Department. The rebuttal portion of my argument will be handled by my colleague Christina Williams who is making her first appearance before this court. Now at bottom, your honors, I believe this should be a simple case. It presents an as-applied First Amendment challenge to a City of Dallas charter provision and related ethics code provisions that broadly prohibit political candidacy by city employees. Now there is no dispute that Mr. Phillips was terminated solely and exclusively because of the announcement of his candidacy for the office of County Commissioner, which is not a City of Dallas office. It's a county office. It's outside the city's zone of workplace interest. Now I think the procedural posture here today, your honors, is quite important. We're here on a successful 12c judgment on the pleadings motion by the city. Very limited review. The city sought judgment under 12c, sought judgment on the pleadings based on the contention that there is no recognized First Amendment right to candidacy. That's flatly incorrect as a matter of law. That was their exclusive basis for seeking 12c judgment and Judge Solis, to his credit, rejected that argument and that rejection was well-founded as this court said in the tonery case from 1979 cited in our briefs there is no question that candidacy for office and participating in political activities are forms of expression protected by the First Amendment. That's a principle that this court has reiterated over and over. The en banc court adopted similar language in the Morrill v. Louisiana Judicial Conduct Commission case in 1979. The quote from the en banc court was candidacy for office is one of the ultimate forms of political expression in our society. Just so, and Judge Solis got that right when in his opinion he said stated another way, the city believes the First Amendment affords no protection to the act of running for office. That cannot be. Becoming a candidate is within the First Amendment's ambit. So that's why they sought judgment on the pleadings. They were wrong about that. Nonetheless, Judge Solis, very fine district judge who we all respect and hold in the highest regard, I think got it wrong by skipping the second step of the analysis. The analysis I refer to, of course, your honors, is the pickering analysis, the balancing test that the Supreme Court has imposed on situations like this where the First Amendment rights of a municipal employee are being limited by their governmental employer. The pickering test, the language from the Supreme Court, classic language we're all familiar with, is that there must be a balance between the interests of the employee as a citizen in commenting upon matters of public concern in the interest of the state as an employer in promoting the efficiency of the public service it performs through its employees. So once we've established, as I think we have, that there is a First Amendment right at issue here, here the right to declare candidacy, we move to the second phase of that pickering balancing and it's here where I think Judge Solis's opinion is wanting. Why isn't he covered by, I mean, he applied letter carriers and that was a far broader prohibition because, first of all, there was no limit on the offices, there was any partisan office, there was no geographic limit. It applied not just to running for office but to helping campaigns. I mean, a broad variety of conduct and he basically says that all the same interests that supported that federal ban support the city of Dallas's more political conduct. So, I mean, just how do you get out from under that? Several points in response to that, Judge Costa. First and foremost, letter carriers was a facial challenge to the Hatch Act brought by, it was class action, actually, a wide variety of groups representing federal employees. Here, this is one employee bringing an as-applied challenge that's utterly unique to his situation. But that seems to me, so you want us to make an individualized as-applied determination to each person who gets, to whom a rule like this gets applied. It seems to me that's a more dangerous situation because then if you're requiring selective application of this, you get into the concern that, oh, well, they terminated Mr. Phillips because he's a Democrat running for office or they terminated this other person because she's a Republican. I mean, isn't there a benefit here from having a blanket rule that says you're not allowed to run for any partisan office and, you know, and as circumstances leads, in my view, to the viewpoint discrimination that we're most concerned about. Well, Judge Costa, part of the unusual nature of the situation at bench, and this is discussed in the briefs, is Texas law has fundamentally changed subsequent to this dispute. Mr. Phillips has the dubious distinction, dubious honor, an honor he never wanted, of being the last person in Texas dismissed for announcing his candidacy. There's a new law in Texas, forward-looking law, called the, referred to as the Senator Gallego's law, that allows government employees to announce candidacy for office. Unfortunately, that does not cover Mr. Phillips. It's forward-looking. This happened prior to that, so the concern your honor expresses about viewpoint discrimination arising, at least in Texas, I think is handled by the Senator Gallego's law, which actually goes in the opposite direction and says, no, these interests in workplace partisanship or whatever the interest may be, and I'm still a little unclear as to what those interests are from the city's perspective. I know what Judge Solis said they are, but the city in its 12C motion doesn't advocate those interests. They moved for judgment on the pleadings, Judge Costa, on prong one of Pickering, left prong two unaddressed. Now, Judge Solis, in his opinion, helped them out a little bit with that in invoking letter carriers and performing analysis that's absent from their Rule 12C motion and from their Rule 12C reply brief. Don't we take the case at the time and in the manner that it is presented, and at that time, this new legislation you're talking about did not exist, the concerns Judge Costa has talked about, and I think the concerns really of letter carriers seem to be fully applicable to what was done by the District Court, that you look upon this as the same considerations as in letter carrier. So it's in your brief. You've argued it here. How exactly, other than telling us what Texas's view on this is now, what is the legal relevance of the change in the law? It's really an atmospheric, Judge Southwick. I'll concede that it doesn't control. I think it shows that the partisan concerns, the workplace concerns that Judge Solis attributed to the city, even though the city doesn't urge them in its 12C briefing at least, are perhaps not as compelling as they would be made out to be, particularly in the context, and this is where we get into the as with no managerial function, no supervisory function, running for an office, not in the city. Certainly there's workplace concerns if he were challenging his boss or challenging superiors in the city of Dallas. He's running for office in a separate sovereignty. Does the county commissioner have any authority within the city of Dallas? Your Honor, I don't think that's a matter of record, but I'll represent to the court that it is a matter of record. They're separate entities, city and county. Cities and any counties in the country, I suppose, there are separate bodies, but the sheriff might have some responsibility within the city, depending on what arrangement has been made. I'm just asking if it's in the record or if the statute is clear that a county commissioner is up to the task. A county commissioner placed three, challenging a colorful local politician. Has no responsibility within the city of Dallas, no authority within the city of Dallas? Your Honor, I'm not aware of any, and the record doesn't indicate any. I would suggest that insofar as the city moved for 12C judgment and has the burden on that, that's not something that's presented in their 12C papers. To the extent the concern was that if Fireman Phillips had been elected, which he was not, to the county commission that he could have somehow interfered with city of Dallas operations, that's not presented in the... No budgetary cheering, I suppose? No funding one way? Your Honor, I'm more or less a lifelong Dallas guy, and the county and the city don't always get along, in my experience, but that's outside the record. Very rare, I'll bet, around the country. But to return to your point, Judge Costa, with the as-applied nature of this, I think at a minimum, and maybe this is a procedural formality, but if they're going to receive judgment on the pleadings, they'd have to make this argument, and we'd have to perform that second phase of the Pickering analysis. I think Judge Solis, in essence, just took a bit of a shortcut here, in that he got it absolutely right on Pickering Prong 1, the existence of a First Amendment right, and then he analyzed things that weren't before him yet as to what city interests, the compelling city interest, tailored to its workforce interest, were at stake here. That's just not a matter of record. We can look to letter carriers for sort of these broad, sweeping principles that we don't like a partisan workforce, but that wasn't before the district court yet. When you have a blanket prohibition, take the Hatch Act that was upheld in letter carriers, that allows the feds to enforce that policy before they start to see the bad effects of a particular employee doing that. Otherwise, the policy is kind of meaningless because it's not preventing the disruption and the concern about the public viewing the governing body as a political entity. Have you seen any, is there any case law allowing the as-applied challenge, as you call it, in this context? I think a case that's directly on point that's cited in the briefs is the Hickman case, also against the city of Dallas, decided by District Judge Barefoot Sanders, 1979, affirmed without opinion by this court in 1980. It's post-letter carriers. It's post-Pickering. It applies a Pickering analysis to an earlier version of the city's statute, and in that case it was a police officer who had lost his job for declaring candidacy for a city council seat in the Dallas suburb of DeSoto. One of the distinctions of nonpartisan versus partisan Hatch Act partisan elections, wasn't Hickman a nonpartisan election? Your Honor, I'd say that's the only meaningful point of distinction as between this case and Hickman, and Hickman in its text says that it is not decided exclusively on the basis of partisanship. That's one factor to look at. That's one of the as-applied factors. It's an important factor in letter carriers, the partisanship, and that's what Judge Solis was facing was partisan elections here, correct? The county commission is a partisan office. That's correct. Fireman Phillips wanted to run in the Democratic primary against an incumbent. But Hickman also. I mean, there's that key distinction, but Hickman wasn't an as-applied. I mean, Judge Sanders enjoined the provisions that prohibited participation in nonpartisan events, so it was just like letters carriers, and all these cases have been presented where we look at the general rule and see if it passes muster under Pickering. Why do you say it's an as-applied case focused just on Mr. Hickman? Well, it got into the weeds on the police officer, Officer Hickman, who was, it talked about the nature of his office. It talked about how if he were running against one of his superiors within the city of Dallas as opposed to the city of DeSoto, it might be a very different case, and it talked about partisanship as a factor to consider but not sort of a cure-all. What I would say, Judge Costa, is that viewpoint neutrality, which Judge Solis treats as the dispositive factor, is a necessary but not sufficient basis for constitutionality, that the fact that it's viewpoint neutral is certainly in the ordinance's favor, but in and of itself is not enough. Yet carefully read, Judge Solis's opinion treats it as in and of itself enough. Certainly we can all agree that a statute that discriminates on the basis of viewpoint would be a graver constitutional sin than one that's viewpoint neutral. That does not mean that all viewpoint neutral inhibitions on municipal employee First Amendment rights are per se constitutional, yet I think that's really the implication of Judge Solis's opinion. What cases can you cite striking down a ban on public employees running for partisan office? Your Honor, we've cited our best cases in our brief. I'm not aware of one on partisanship. I think the best case that we have, even though the Judicial Conduct Commission ultimately prevailed, is this court's en banc decision in Morial where it talks about the balancing that takes place. I would submit to this court that a sitting state of Louisiana judge running for mayor of New Orleans presents a very, very different scenario than a low-level Dallas fireman with no managerial or supervisory responsibility running for an office outside the city of Dallas. And this court, in its en banc form, really took its time and was very careful in Morial, analyzed very fact—it didn't just say letter carriers applies and end of story the way Judge Solis did. And that, to me, if you perform the Morial-style analysis here, that's the step that Judge Solis, who I have the ultimate respect for, but that's the step he skipped here and just said letter carriers applies to partisan offices,  Let me make sure I understand what you're asking for. You want this ordinance declared unconstitutional, but aren't you also seeking your client's reinstatement, back pay, etc.? Your Honor, he's a career fireman, 12-year veteran of the fire department. He'd like to get back to being a fireman, and he'd like some back pay. That's ultimately what we're seeking here is his reinstatement to the Dallas Fire Department. Is there anything in the ordinance that makes this a permanent ban on running for office? You'll be terminated. Is there any express lingering effect of that where he can't be rehired by the city? Not that I'm aware of, Your Honor, but if they had tailored it to say take a leave of absence during the campaign, if there had been that sort of tailoring to say you can still be a fireman after this campaign is over, that might present a horse of a different constitutional color. As it is, he was terminated. He's never been reinstated. He'd like to be. I see my time is up unless there are any other questions. Thank you, Your Honor. All right. Thank you, sir. All right. We'll hear from the city. Mr. Palmer. Good morning, Your Honors. Good morning. May it please the Court, my name is Nicholas Palmer, and together with my colleague, Barbara Rosenberg, I represent the Defendant Appellee, the City of Dallas in this matter. This morning, I want to approach this case by first clarifying the procedural posture about how this case got here for this Court, as I don't believe this Court had a complete picture of the briefing and the arguments made at the District Court a few moments ago. I then intend to discuss Mr. Phillips' as-applied challenge to the City Charter and Code of Ethics provisions at issue by first addressing the second phase or the balancing phase of the Pickering analysis, because that is what the District Court found to be dispositive below. I will then move on to the threshold question of whether or not Mr. Phillips engaged in any act of protected speech in this case to begin with. With regards to Mr. Phillips' facial challenge and his arguments with respect to a stopple, unless this Court has any specific questions, I will leave those matters to the arguments outlined in the City's brief. Now, first of all, Your Honors, as I said, I'd like to clarify the procedural posture of this case. It did not arrive here under simply the granting of the City's motion for judgment on the pleadings. There were two motions for judgment on the pleadings in the District Court, one that was also filed by Mr. Phillips himself. In response to Mr. Phillips' motion for judgment on the pleadings, the City pointed out that in order for him to prevail, he would have had to engage in the balancing analysis under Pickering, and that even under that Pickering analysis, the City's interests prevailed, and the City identified two interests to the District Court. The first of those interests, maintaining a nonpartisan workforce pursuant to letter carriers Mitchell and Broderick, was the one that Judge Solis found to be dispositive. So there was a balancing phase under Pickering. Mr. Phillips is simply unhappy with the breadth of the balancing phase. Now, with respect to the balancing phase, Judge Solis did get it right, and that is that under the binding precedence from the Supreme Court and this Court, the City's interests in maintaining a nonpartisan workforce, as well as the City's interest in maintaining the integrity and impartiality of its uniformed services, outweigh any purported interest that Mr. Phillips could have had in his candidacy. Let me ask you, Counsel, I'm not sure what legal effect it may have, but the fact that the State of Texas apparently has made that balance itself later and said your interests you're talking about are not significant enough to ban this, does that suggest a reevaluation? Do we have the right to reevaluate when the State itself has indicated these kinds of interests are not weighty enough? No, Your Honor, and the reason I say no is because both in Mitchell and letter carriers, the Supreme Court specifically stated that Congress or the State Legislature is welcome to draw the line wherever it wants to draw the line, but the issue here, because Mr. Phillips has challenged these provisions under the Federal Constitution, is the same as it was presented in letter carriers. Does the City's interest in nonpartisanship under the Federal Constitution, First Amendment, which says the same thing today that it said when Mr. Phillips was terminated, was that violated? And it wasn't. The fact that the State Legislature has moved the line was a matter of policy, not a matter of constitutional interpretation left to this Court. Now, the City's interest in maintaining a nonpartisan workforce is significant, as the Supreme Court has stressed numerous times. Isn't it much greater, though, with respect to higher-ranking City officials? I mean, I can see if some high-ranking City official who the public associates with the City, you know, runs for office as a Democrat, and people are going to think, oh boy, the City of Dallas, if I'm not sympathetic to the Democrats, I'm going to not be able to deal with them or get service from them. I mean, here, I mean, Mr. Phillips did very important work, but it wasn't public work, and in no way is anyone going to associate him with, you know, as the face of the City. Why isn't the interest a lot less with what Mr. Phillips' counsel calls lower-level employees? Well, that's an important point, Judge Costa, and what I would like to identify that's unique about this case and what is very significant to the analysis in this case is that this case was not a, what I call, retaliation discharge, like Click v. Copeland and all of the other cases cited by Mr. Phillips in his brief. In those cases, they do focus on the level of the employee, whether or not there was, it was a confidential employee or a managerial employee, but the employees there were not discharged under a viewpoint-neutral rule prohibiting their candidacy. They were discharged because their supervisors said, I am targeting your candidacy specifically, and that's not what has happened here. This Court, sitting en banc, expressly distinguished cases in which there are viewpoint-neutral rules prohibiting candidacy in its Morial decision, and according to this en banc Court, when conducting the analysis for a viewpoint-neutral ban, such as the City Charter and Code of Ethics at issue here, the Court's analysis must be guided by the Hatch Act cases, Letter Carriers, Mitchell, and Broderick. But Morial was a case of judges who were very public, not lower-level people outside the public eye. That is correct, Your Honor. However, there was no distinction, no interest was raised whatsoever about the Court did not even opine that it would be a different case were it a lower-level employee. With respect to the lower-level employees, I would point to the Mitchell case out of the Supreme Court where the individual had absolutely, Poole, the only plaintiff who had standing, had absolutely no contact with the public whatsoever. He didn't even want to be a political candidate. He merely wanted to engage in political activities, and he had been told that he was going to lose his position as a roller for the U.S. Mint, which the opinion said was the equivalent to being a mechanic. Again, having no contact with the public whatsoever, the United States Supreme Court said his discharge by the Civil Service Commission was constitutional. Counsel, in your brief, you haven't brought it up, today you take issue with what Judge Solis accepted and certainly what opposing counsel believes, which is that the Fifth Circuit has held that there is a constitutional right to candidacy. Are you taking that position here today that that is still an open question in the Fifth Circuit? Absolutely, Your Honor. I believe that that is still an open question in the Fifth Circuit, that this Court need not decide in order to affirm the judgment below in light of the interests clearly weighing in favor of the city in this case. However, if this Court decided to reach that issue as a threshold matter, the Fifth Circuit has not reached a decision on that. There is nothing but dicta that Mr. Phillips has been able to cite from this Court. It was clear, dicta. It was clear, Your Honor, but it was dicta, and I would also submit to Your Honor that it was also not challenged in that case. Nobody in that case said that there was not a constitutional right to candidacy under the First Amendment. And so— So if it's an open issue, I mean, pretend there's no case law, but if there's all this case law saying all this other political conduct, like giving donations is First Amendment-protected activity, why isn't running for office, which is fundamental to the democratic system, enjoy at least some First Amendment protection? Well, Your Honor, I think for that we have to look to the Constitution, read it as a whole, and look at how it has been interpreted by the United States Supreme Court. And what I mean by that is the United States Supreme Court has twice held, first in Bullitt v. Carter and then subsequently in Clements v. Fashing, that there is no fundamental right to candidacy. Now, those statements were made in challenges brought under the Equal Protection Clause of the Fourteenth Amendment. But why it is persuasive here is because the Supreme Court in other equal protection cases, namely Williams v. Rhodes and subsequently in Mergia, stated that all First Amendment interests are fundamental. So if you have holdings from the Supreme Court that say all First Amendment interests are fundamental, giving rise to strict scrutiny under an equal protection analysis, but candidacy is not a fundamental interest and therefore can be subject to rational basis review under the Equal Protection Clause as they did in Clements, candidacy is necessarily not a First Amendment interest under the—is not speech under the First Amendment. That also brings me to the fact that two of this Court's sister circuits have very wisely decided that candidacy alone is not protected by the First Amendment. It needs to be candidacy plus some act of speech or plus some other act of assembly in order to shroud oneself in the— Why isn't running as a Democrat some—convey some message? Well, that would potentially convey some message if Mr. Phillips in his pleadings had alleged that he felt that he was discharged for his personal viewpoints. Mr. Phillips has never made that allegation here. Even in the circuits, the Sixth and the Seventh, that find that there is no right to candidacy, they allow plaintiffs to sustain a cause of action under 1983 if they say, I believe my personal viewpoints have been challenged. But even today, Mr. Phillips stated that it is strictly and—excuse me, solely and exclusively because of his partisan candidacy, not because he ran as a Democrat specifically, that he was discharged. Mr. Phillips ran in violation of the rules, which this Court has acknowledged today, were much narrower than the rules that had been repeatedly upheld by the Supreme Court, also narrower than the rule that was upheld by this Court in Morial, which prohibited even nonpartisan races by judges. The judges in that case were not allowed to run in any type of election. As a matter of fact, the Morial election was a nonpartisan election. I'd like to get back to the interests that were discussed in the Court below briefly. And it's not—the interest that the City brought forward in the Court below wasn't just its interest in maintaining a nonpartisan workforce. Of course, under letter carriers and its progeny, that would be enough for the City to prevail, but the City's interests do not end there. The City also cited its interest in maintaining the integrity and impartiality of its uniformed services, and that was an interest that this Court specifically endorsed in its Waxman v. City of Dallas decision. And in Waxman, this Court found, first of all, that there is no distinction between a race in Dallas County and a race in the City of Dallas. The Court observed that when you get to local elections, they're not conducted in these nice boxes where the constituents understand that their firefighter or police officer who is soliciting them for donations is actually seeking county office in a different body as opposed to city office. But this Court also talked about and has cited in the City's brief the fact that there is the potential for coercion upon the public when a police officer or firefighter is even allowed to solicit funds for somebody else running for office because an individual may feel compelled to contribute because they feel that they are dependent upon that person for fire or police services. And that's particularly applicable here because Mr. Phillips ran for a partisan political office in Dallas County. Dallas County is largely comprised of the City of Dallas. And so he was hoping that the very citizens that he has sworn to provide emergency medical and fire services to would elect him to office. I'd also like to touch on the fact that Mr. Phillips has stated that, well, this could have been more narrowly drawn and therefore something like a leave of absence would have been more appropriate under the Constitution. This would have been a different constitutional preacher. That same argument was brought before this Court in Morial. And in Morial, the Court said, no, that's not the case. The City's interest only needed to rise to the level of reasonably necessary to its enactment only needed to be reasonably necessary to further its interests. And Judge Morial said, well, I should have been allowed to take a leave of absence instead of being forced to resign my seat on the bench. And the Court said no because of the potential for retaliation once you resume your seat. That same potential for retaliation amongst the citizenry he would hope would elect him are still present in this case. Now, I am not trying to suggest to this Court that Mr. Phillips himself is suspected of having any ill motives were he not to be elected or anything of that sort, just as there were no allegations of animus towards Judge Morial. But the City still has a significant interest in making sure that Mr. Phillips or nobody else in the police and fire services have the ability to coerce the Court out of fear that they are dependent upon that person for emergency fire and medical services. Your Honors, I'd like to also talk about the Hickman case for just a moment since you discussed it a few moments ago. The Hickman case was different in a number of reasons, not just the fact that it was nonpartisan, nonpartisan, I believe, being the most important, but also that the plaintiff in the Hickman case was seeking office in another city that was not within the City of Dallas. So the police officer in Hickman was running in a completely different jurisdiction where his city, by virtue of the City of Dallas employment, he didn't have any obligation to deliver any services to the city that he hoped would elect him in that case. In this case, because first it's partisan, so that distinguishes it from Hickman, but second, Mr. Phillips was hoping that the very citizens that are dependent upon him for emergency services would elect him. So this case is a wholly different creature than the Hickman decision. How many—was Dallas the only city in Texas that had this rule? And I know now the state superseded it. Did other cities have a similar rule? I cannot tell you which cities did. I can only tell you based on what I know about the legislative history from the Senator Mario Gallegos Act that other cities did have that rule. Senator Mario Gallegos himself, the sponsor of the Act, had talked about— he wanted to pass this legislation because his young political ambitions had been thwarted by virtue of his municipal employment. And so—and that wasn't in the City of Dallas. That was in South Texas. So I know they existed elsewhere, but I am not able to give the Court an accounting of which cities had those rules here today. The bill passed, right? The bill did pass, Your Honor. It just sort of suggests, even though it might have arisen from a limited specter, to be able to get that kind of a bill passed in the whole legislature when there are these preceding policies. I'm not sure what to read into it, but it seemed like sort of a seismic change in the culture given the interest that you're articulating that a majority of the legislature, you know, moves to kneel in that direction. And at any event, I'm not saying, as others have, that it resolves anything here, but at least sort of makes one wonder if some of all these underlying policy concerns, etc., albeit not affected by the way, are as intrinsic, as endemic, game-changing, as argued if a motion in the second, you know, obliterated all of this, you know, prospective with the Republic of Texas not drifting off into the Rio Grande, you know? Your Honor, I will acknowledge that this was a seismic change, not just for the city of Dallas, but for, I'm sure, many other municipalities throughout the state. However, the Texas legislature acted pursuant to its power to pass a new policy within the state of Texas. And that is a power that the judiciary acknowledged in both Letter Carriers and Mitchell that is best left to the legislature. What it did not do was offend the First Amendment of the United States Constitution. I recognize my time is about to run out. What was Mr. Phillips best out to have gotten able counsel to have gotten him grandfathered into that legislation? There is no provision for Mr. Phillips to grandfather him. It really wasn't a serious question, but, you know, I did think about it. Given the gravity of his circumstance, and, again, the sort of waning probability of the policies that are there, which are not unimportant, but it just strikes me a bit odd. I mean, we're deciding his case was there. Go ahead with your point. And, Your Honor, I understand that for Mr. Phillips, as well as for any of the other number of people who forfeited their positions with the city of Dallas, who were discharged pursuant to these rules, now that this law has passed, that might be a tough pill to swallow in retrospect. But what we know from Letter Carriers, Mitchell, Broderick, Morial, and any other number of cases that have been before this court and the Supreme Court, where there are these rules in place, especially as narrowly drawn as the city of Dallas' rule is in this case, they do not offend the First Amendment. And so for all of the reasons that we've discussed here today, I would ask that this court affirm the judgment of the district court. All right. Thank you, sir. All right, Ms. Williams, I believe you're carrying the ball in rebuttal. May it please the Court, I'd like to start today with addressing the opposing counsel's contention that this right is not recognized. Certainly we would disagree in the Fifth Circuit, and I think there's also strong case law from the United States Supreme Court that, particularly in 2014 in Lane v. Franks, that court recognized that public employers may not condition employment on the relinquishment of constitutional rights. Now, we know from United States v. Tonry, from this circuit in 1979, that there is no question that candidacy for office and participating in political activities are forms of expression protected by the First Amendment. And in Click v. Copeland, this court extended that right to seek partisan office, so I'm not sure how it could be any more clear within this circuit that the right to run for office for a public employee exists under the First Amendment. Now, is that right fundamental? Not necessarily, but it doesn't have to be. That's an equal protection question that is really a red herring and not relevant to today's First Amendment question. So once we get past that issue, you know, it's clear that the district court did not actually apply Pickering. Now, did it recognize the letter carriers and the Mitchell cases and whatnot? Yes, it did, but this court has said that you have to go further. In Morreale, the en banc court, facing a neutral law that prohibited any judge from running for another office before and without resigning his office, still applied Pickering, and it asked what the very specific compelling interest was, and that was protecting judicial integrity and guarding against judicial impropriety. And there the rule was tailored reasonably necessary to accomplish that objective in requiring a judge to resign. Why did you file the Rule 12 motion for judgment on the pleadings if you think there needs to be this more fact-based, individualized Pickering assessment? I would say that, first, it's a legal question whether the right exists, and then, second, there was plenty of evidence before the court. At Record Act Cert IV, the termination letter that was given to Mr. Phillips clearly said that he was fired for his candidacy. And while it may be a slight burden for the city to have to undergo an as-applied test to every individual it terminates, that's simply what the First Amendment jurisprudence requires, and it's simply not enough to have a content-neutral law and just stop there. If that would have been enough, the en banc court would have not in Morreale then actually applied it to the particular judge. So while that may be a slight burden for the city, and certainly it's beneficial to have rules that do not allow discrimination based on viewpoint, it's simply not the case that this rule was actually tailored to address partisan activities in the city of Dallas. Whose burden is it under our case law on the Pickering test? Is it the plaintiff or the defense burden to prevail under those factors? I believe it's the defense burden to the city's burden to show that they have a compelling interest and that their rule is reasonably necessary to affect that interest. Now the record shows that in the city of Dallas, the mayor in fact ran for a state senate seat, which this rule would prevent Mr. Phillips from doing. The same rule that prevents him from running for Dallas County, which is a larger entity and governmental body very separate from the city, but yes, there is overlap geographically. The same rule would prevent him from running for a Texas Supreme Court seat, and perhaps the citizens that need fire protection might be concerned that if they don't donate, their house is going to burn down if he doesn't become the judge. But I think we also need to ask, is the interest that they're stating, is that a valid concern and interest? I mean we can hypothesize many interests here today. Now they point to the Mitchell case as upholding the Broad-Hatch Act, which it certainly did, but what's important to note about Mitchell is this was a pre-Pickering case from the 1940s, so of course before Pickering came along, why would the court have applied the Pickering test? They also point out that in Morial there was a judicial leave of absence that would have been possible for the judge. However, a judge taking a leave of absence in a fireman is certainly very different, and there it was not the Fifth Circuit that really hinged upon that leave of absence, but instead that was something that was more of an issue for the state judicial commission. And they also would like to rely on some Sixth and Seventh Circuit cases, and they do so extensively in their briefing, and not only would that be the wrong circuit, and the Fifth Circuit case law is clearly in conflict with that, but this court in Jordan v. Ector County in 2008 said that the reliance on the Sixth Circuit cases were misplaced. Thank you. Thank you, counsel, both sides, for the briefing and argument. The case will be taken under advisement along with the other cases that have been argued to the panel. That said, the panel will stand.